Summers, J.
In the first case the first cause of action is grounded upon the absence of an adequate remedy at law. The contention on the part of plaintiff, as we understand it, is that the right sought to • be appropriated is inconsistent with and destructive of plaintiff’s right; that the use to which defendant seeks to subject the property will be subversive of the use made of it by plaintiff and that inasmuch as that use is public, that particular property is not subject to appropriation, and the probate judge having no jurisdiction to determine what property may be taken, is without authority to determine the question of inconsistent public uses. The argument then proceeds to the effect that prior to the act of 1872 (69 O. L., 88), in which it was provided that the probate judge shall determine the questions of the corporate existence of the corporation, its legal right to make appropriations of private property under the act, its inability to agree with the owner of the property sought to be appropriated, and the necessity of the appropriation, this court had ruled that the right of such a corporation to appropriate private property depends upon a showing of its corporate existence and its legal right to make appropriation of private property; that the former was shown by its certificate of incorporation and the latter by proof *379 of its organization; that this was the legal signification of these words before the passage of the act and that they must be understood as so used in the act; that the question of the necessity of the appropriation does not involve the determination of the necessity of taking the particular property sought to be appropriated, but is limited to whether the particular railroad is for a public or for á private purpose.
In the second case the petition is grounded upon the assumption that the probate court is without jurisdiction to determine the necessity of appropriating the right to cross at the particular place at which the right is sought, and that an appropriation of the right to cross at that particular place would be, under the facts stated, an oppressive and unjustifiable use of its corporate power by the defendant, which a court of equity may prevent. And the contention of counsel, while in line with that of counsel in the first case as to the legal signification of certain of the jurisdictional questions yet, as to the question of necessity, is that it is within the political power entrusted to the general assembly, and that it may not delegate it to the judiciary; that in requiring the probate judge to determine the necessity for the appropriation the legislature intended only that he should determine that the proposed taking is for a real bona fide public use.
Conceding that the signification of the question of corporate existence and of the question of legal right is to be ascertained by reference to the decisions of this court prior to the act of 1872, is it not probable that the submission.of the question of the necessity of the appropriation to the determination of the probate judge was but the adoption of the suggestion *380 of an eminent judge of this court? In Giesy v. The C. W. & Z. R. R. Co., 4 Ohio St., 326, decided prior to 1872, Ranney, J., suggested that to him it would seem “much more consistent with a proper regard for private rights, that the question of necessity as well as compensation should here, as in England, be determined by some impartial public tribunal.” To what the judge referred does not clearly appear from an examination of the act of 1845, 8 Vic., Oap. 18 and 20, and the decisions shortly subsequent thereto.
The right of eminent domain is the right to take private property for a public use. Whether or not the use is public is a judicial question, and the use being public the right is absolute in the general assembly, unless restricted by the constitution, and it is entirely in its discretion whether it is necessary to take property for such use, that is, whether the public welfare requires or will be promoted by such taking. It may determine the public necessity of taking property for a public use and confer the power to take for such use upon corporations or individuals or it may confer the power to take subject to the determination by some other authority of the necessity of the particular improvement for which the property is sought or of taking the whole or any part of the particular property sought to be taken.
Mr. Lewis in his work on Eminent Domain, sec. 393, says: ‘ ‘ The question of necessity in condemnation proceedings presents itself in various aspects.” And he states five. The fourth and fifth he states as follows and cites many illustrative cases: -“Fourth, it may be objected that there is no necessity of condemning the particular property, because some other location might be made or other property obtained by agreement. But this objection is unavailing. Ex *381 cept as specially restricted by the legislature, those invested with the power of eminent domain for a public purpose, can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts. . Fifth, the question of necessity may arise under general grants of power which expressly or by implication limit the right to such and so much property as may be necessary for the proposed purpose. If the legislature designates how much may be taken, the courts cannot interfere, except to prevent an abuse of the power. * * * But, when the statute does not designate the property to be taken, nor how much may be taken, then the necessity of taking particular property is a question for the courts. Where the application to condemn is made directly to a court, the question should be raised and decided in limine.”
In a note to Lynch v. Forbes, 42 Am. St. Rep., 402, 407, Judge Freeman says:
‘ ‘ The legislature has, however, very rarely undertaken to designate the precise property which should be taken for any public use, but has generally, as in the statute under consideration in the principal case, merely conferred authority to take for the public use the lands or real estate necessary therefor. Under statutes of this character, the courts, so far as we are aware, with the single exception of those in Massachusetts, have regarded the allegation of a necessity for the taking as an issuable one, which it was not competent for the plaintiff, or person, or corporation seeking the condemnation to determine, and have permitted the person whose property wae to be taken to litigate this question, and to defeat the proposed appropriation so far as it appeared to be un *382 necessary. There are doubtless many instances in which it may be exceedingly difficult to determine whether or not the whole of the property sought to be acquired is necessary for the use for which it is sought to be taken, and perhaps in these cases the courts may hesitate to overrule the judgment of the corporation or other body authorized to acquire property for the public use. Whether this be true or not, it is affirmed by an almost overwhelming preponderance of the authorities that the rule apparently asserted in the principal case cannot be sustained, and that, where the legislature has only authorized the taking of such property as is necessary, the question of the necessity for taking is a judicial one which must be determined either by a court, jury, or some quasi-judicial tribunal designated in the statute.”
In Illinois, although there is no statutory provision making the question of necessity a question for the courts, the court holds that the question may be made and that while a railway company is vested with a large discretion to determine the land necessary for its purposes, yet it is subject to the power of the courts to prevent an abuse of it. O’Hare v. C. M. & N. R. R. Co., 139 Ill., 154.
“The Sanitary District of Chicago, under the power conferred upon it by the legislature, when proceeding to condemn lands for the purpose for which it was organized, must, of necessity, to a modified extent, be allowed to determine for itself the quantity of land to be taken for its ditches or channels.
“This right is subordinate to all statutory and constitutional restrictions, and also the further limitation that the courts of the state which are authorized to entertain applications to condemn, are clothed *383 with ample power to prevent any abuse of the right." Tedens et al. v. Sanitary District, 149 Ill., 87.
In In re St. Paul & N. P. Ry. Co., 34 Minn., 227, 230, it is said: “Whether, however, the use for which lands are sought to be taken, in such cases is a public use, and whether they are reasonably necessary or required therefor by the corporation, or whether a proposed public use would be inconsistent with or subversive of-a prior public use to which particular lands sought to be appropriated had already been dedicated, — these are undoubtedly questions for the court, and, so far as the determination thereof may affect the prosecution of a proposed enterprise, it will to that extent, be únder the control of the court."
In England the practice seems to be to apply to a court of equity to enjoin a company from appropriating land not necessary for its road. Flower v. The London, Brighton & S. C. Ry. Co., 34 L. J., 540; S. & D. Ry. Co. v. Brown, 9 H. L., 246. And in the latter case Lord Cranworth says: “Some general propositions admit of no doubt. In the first place, I think it clear that when the legislature authorizes railway directors to take, for the purposes of their undertaking, any lands specially described in their act, it constitutes them the sole judges as to whether they will or will not take those lands; provided only that they take them bona fide with the object of using them for the purposes authorized by the legislature, and not for any sinister or collateral purpose. This is the construction to be put on all such legislative powers, w*hether the language of the act is that the company may take so much of the lands as is necessary for the undertaking, or so much as is required or is expedient to be taken, or simply (as in this case) that the company may take lands for the purposes of *384 the undertaking. In such cases, the legislature, having provided what it considers sufficient means for securing adequate compensation to the owners of the.land, leaves it to those interested in the undertaking to say to what extent it will be useful to them to exercise their statutable powers.
“This principle, founded in good sense, has been sanctioned by authority in more than one decided case. ’ ’
Applying this principle it is very doubtful if the petition in either case states a cause of action, but, be this as it may, we do not think the legislature intended in requiring a determination of the necessity of the appropriation as a condition precedent to the right to appropriate to provide for a determination of the necessity of the improvement or* merely that the -particular land was sought for the use of the corporation. And while it may not be best to attempt to determine the meaning of that question it is at least apparent that it was intended thereby to so regulate or limit the exercise of the power as to prevent its abuse and no reason is apparent why the question sought to be raised in these actions might not better be made in the appropriation cases.
We have so far proceeded upon the assumption that the meaning of the jurisdictional question of the legal right of the corporation to make the appropriation must be ascertained by reference to the cases decided prior to the passage of the act of 1872, but we do not wish to be understood as so holding. Prior to the act of 1852 appropriations had been infrequent, but there were many prior to the” act of 1872, and experience may have shown the desirability of imposing upon the probate judge the duty to determine,- prior to empaneling a jury, the right *385 to appropriate and the necessity of the particular .appropriation, and there are many reasons why the •court, having original jurisdiction of the appropriation, should have and many why it should not be held not to have authority to determine every question that properly may be determined in such a proceeding.
Independently of the signification of any of the so-called jurisdictional questions, it is not apparent that the jurisdiction of the probate court is limited to a determination of these questions. The fact that the legislature has seen fit, from considerations of convenience or otherwise, to require the probate judge to determine these questions in limine does not necessarily make applicable the maxim expressio unius est exclusio alterius.
There is another consideration not to be overlooked. A railroad corporation, as is shown in Railway v. Railway, 30 Ohio St., 604, does not hold an absolute right in property acquired for its right of way, but takes it by permission of the state and holds it subject to the power of the state to grant the right to cross it for public uses to another. So that it would not follow that a court of equity has jurisdiction because of the want of an adequate remedy at law, but rather that the remedy is the measure of the'right, and that in the absence of a remedy there is no right other than a right to compensation for the property appropriated, as in the case of individuals.
On May 10, 1902, the legislature passed an act, a copy of which is as follows: “An act to provide for one steam railroad crossing another steam railroad. Be it enacted by the general assembly of the state of Ohio: Sec. 1. Where it becomes necessary for the *386 track of one railroad company to cross the track of another railroad company, unless the manner of making such crossings shall he agreed to between such companies, it shall be the duty of the court of common pleas of the county wherein such crossing is located, or a judge thereof in vacation, on application of either party to ascertain and define by its decree the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed; and if in the judgment of such court or such judge thereof it is reasonable and practicable to avoid a grade crossing, it shall by its process prevent a crossing at grade.
“Sec. 2. This act shall take effect and be in force from and after its passage.” (95 O. L., 530.)
The second cause of action, referring to this act and asking the court to ascertain and define by its decree the mode of crossing and also averring that the court had been, in a proceeding commenced on May 27, 1902, before the termination of the appropriation proceeding in the probate court, asked to define the mode of crossing, was considered not to state a cause of action presumably because of section 79 of the Revised Statutes, which provides that whenever a statute is repealed or amended such repeal or amendment shall in no manner affect pending actions or proceedings, and when the repeal or amendment relates to the remedy it shall not affect pending actions or proceedings unless so expressed, and for the same reason presumably, in the second ease the court refused to entertain the application to define the mode of crossing when it found that the petition did not state a cause for injunction on other grounds. But it is to be observed that this act was *387 neither a repeal nor an amendment of a statute but original legislation declared to be in force from and after its passage, and, if valid, the court should have-stayed proceedings in the probate court, and if in its judgment it was reasonable and practicable to avoid a grade crossing, it should have given effect to the commendable policy of the legislation by preventing a crossing at grade.
We have considered the appropriation cases referred to in the statement of facts and find no prejudicial error, unless it shall be found that it is reasonable and practicable to avoid the grade crossings, and judgments in those cases will not be entered at present, but the judgment of the circuit court in each of the cases under consideration is reversed, and each ease is remanded to that court to ascertain and define by its decree the mode of crossing, as provided in said act of May 10, 1902, and such further proceedings as may be authorized by, law, and when advised of such decrees, if it appear that the mode of crossing therein ascertained and defined is the same as the right appropriated, the judgments in the appropriation cases will be affirmed, and if such mode of crossing is not the same, the judgments will be reversed and the cases remanded for further proceedings.

Judgments reversed.

Davis, C. J., Shauck, Price. Crew and Spear, JJ., concur.