JOHN H. TEDENS *et al.*

*v.*

THE SANITARY DISTRICT OF CHICAGO.

*Filed at Ottawa January 16, 1894.*

1. EMINENT DOMAIN—*as to quantity of land taken—judicial supervision.* The Sanitary District of Chicago, under the power conferred upon it by the legislature, when proceeding to condemn lands for the purpose for which it was organized, must, of necessity, to a modified extent, be allowed to determine for itself the quantity of land to be taken for its ditches or channels.

2. This right is subordinate to all statutory and constitutional restrictions, and also the further limitation that the courts of the State which are authorized to entertain applications to condemn, are clothed with ample power to prevent any abuse of the right.

3. While the Sanitary District of Chicago, by the act under which it was organized, has ample power to condemn such a quantity of land as may reasonably be necessary to enable it to carry out the object and purpose of its creation, it has no right to abuse the power conferred, or to take more lands than are reasonably necessary in the construction and maintenance of the channels and outlets.

4. In this case, the Sanitary District of Chicago sought to condemn the whole of an island two miles long and over a quarter of a mile wide, and it was *held*, that whether the taking of so much land was an abuse of power was a question the defendants had the right to have the court determine before the jury was called upon to ascertain the compensation to be paid to the owners.

5. SAME—*production of plans and profiles.* In a proceeding to condemn land for channels, drains, etc., when the amount of land sought to be taken is claimed to be in excess of a reasonable amount, the land owners will have the right to demand the production in court of the plans and profiles of the proposed improvement. Petitioners may be required to furnish sufficient *data* from which the court may determine the amount of land needed for the construction of the work.

6. SAME—*time in which to ask for production of plans, etc.* On the day a condemnation proceeding was set for hearing in vacation, and after the jury was selected, but before any evidence was heard, the defendants moved the court to require the petitioner to produce the plans, profiles, etc., of the proposed improvement: *Held*, that the motion was not made too late.

7. SAME—*instruction as to value of land taken.* On a proceeding to condemn a tract of land, the court, in substance, directed the jury that they were not to consider the price that property would sell for under special or extraordinary circumstances, but its fair cash market value if sold in the market under ordinary circumstances : *Held,* no error.

8. SAME—*value of the land—limiting evidence to time of filing petition—waiver of objection.* On the trial of a condemnation proceeding, if the land owner, without objection, allows the petitioner's witnesses to state the value of the land at the time they examined the same, which was, a week or two before the trial, he will thereby waive his right to object to the evidence on the ground it is not confined to the date of the petition.

9. SAME—*view of land by jury—confined to lands sought to be taken.* It is not proper for the jury, when sent out to view the premises sought to be condemned, to go upon and view other tracts of land in the same locality, and the failure of a party to object to the jury inspecting other lands will not waive his objection.

10. INSTRUCTION—*directing the jury to consider all the evidence.* An objection to an instruction that it directs the jury to take into consideration the evidence of all the witnesses, and thereby requires them to consider evidence excluded by the court, will be obviated by another instruction expressly directing the jury to disregard any evidence introduced and stricken out by the court.

11. SAME—*when error in one is cured by another.* On the trial of a condemnation proceeding the court directed the jury to take into consideration, in determining the value of the property, "the evidence of all the witnesses, and the evidence of sales, as well as the knowledge the jury may have derived from an examination" of the premises, and that "they are required to consider all the evidence in the case." By another instruction the jury were expressly directed to consider the evidence of sales of property similarly situated : *Held,* that the latter instruction qualified the former, and when taken together they are not misleading.

12. PRACTICE—*remarks of the court about the evidence.* The court, on the trial of a case, has no right to tell the jury what he may know, of his own knowledge, in regard to a fact in issue between the parties, but in ruling on the admission of evidence the court may allude to other evidence in the record in explanation of his decision. But the court should use great caution in expressing an opinion on any controverted question of fact in issue.

13. Every unguarded expression of the court in stating reasons to counsel for its rulings can not be regarded as error sufficient to work a reversal. On a trial of a proceeding to condemn land the owner claimed that the land was underlaid with stone, and introduced evidence tend-

ing to prove that fact. On rebuttal the petitioner examined a witness as to the existence of stone on the land. During the examination of the witness a question was objected to as not being rebutting evidence. In passing on the objection the court incidentally remarked : "I have no doubt but it is clearly competent. I have been over the ground, and any man going over that ground would not be looking for stone. I think all you are called upon is to take the surface appearance of the ground :" *Held*, that the remarks of the court were not proper.

APPEAL from the Circuit Court of DuPage county ; the Hon. HENRY B. WILLIS, Judge, presiding.

Mr. JAMES MAHER, for the appellant Lomax.

Messrs. HOYNE, FOLLANSBEE & O'CONNER, and Messrs. COMSTOCK & HESS, for the appellants Carl Moss and John H. Tedens.

Mr. ELLIS S. CHESBROUGH, for the appellant Carl Moss.

Mr. WILLIAM S. BARGE, Mr. ORRIN N. CARTER, Mr. ELBERT H. GARY, and Mr. J. F. SNYDER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a proceeding instituted by the Sanitary District of Chicago to condemn certain lands of appellants constituting a part of Sag Island. The island is a strip of land extending north-east and south-west between the channel of the Des-Plaines river on the north and west, and the Illinois and Michigan canal on the south and east, located about two miles north-east of the village of Lamont, in Cook county. The strip of land was over two miles long and averaged about fourteen hundred feet wide. The petitioner sought to condemn the entire tract.

The petition was presented to one of the judges of the twelfth judicial circuit, in vacation, on July 6, 1892, and the judge ordered that the cause be set down for trial on August 18, 1892. On the day the cause was set for trial, and before any

witnesses had been examined, one of the appellants, by his attorneys, filed a paper, and among other things alleged therein as follows: "This defendant further objects to said petitioner taking the whole of the strip of twelve hundred and fifty feet in its average least width, for the reason that the amount is excessive and is not contemplated in the said act, and is not necessary for the construction of said channel, but is wholly excessive and an injury to the defendant. This defendant, further objecting, says the plan of the line of the proposed channel is not disclosed by the petition filed in this cause. So this defendant says, that for these and many other reasons, and for the many imperfections appearing upon the face of the petition filed herein, he denies that the petitioner has the right to take any or all of the land described by the petitioner, as asked in its petition." The claim was also made by counsel for the appellants, before the court, that the amount of land attempted to be condemned was greatly excessive, and a motion was made for an order requiring the production in court of the plans and profiles. The application was, however, resisted by counsel for the petitioner, and denied by the court.

The seventh section of the act of March 29, 1889, under which the sanitary district was organized, and under which it is sought to condemn the property involved, provides: "The board of trustees of any sanitary district organized under this act shall have power to provide for the drainage of such district, by laying out, establishing, constructing and maintaining one or more channels, drains, ditches and outlets for carrying off and disposing of the drainage (including the sewage) of such district, together with such adjuncts and additions thereto, as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner."

The sanitary district, under the power conferred upon it by the legislature, when proceeding to condemn lands for the purposes for which it was organized, must, of necessity, to a

modified extent, be allowed to determine for itself the quantity of land to be taken to be used for the ditch or channel. But as held in *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 515, the right is subordinate to all statutory and constitutional restrictions, and also the further limitation that the courts of the State which are authorized to entertain applications of this character are clothed with ample power to prevent any abuses of this right by such corporations. While the district, by the act under which it was organized, has ample power to condemn such a quantity of land as may reasonably be necessary to be taken and used to enable it to carry out the object and purpose contemplated by the legislature in passing the act, it has no right to abuse the power conferred, or to take more lands than are reasonably necessary to be used in the construction and maintenance of the drains and outlets. As appears from the petition the lands proposed to be taken embrace a strip over a quarter of a mile wide. Whether it was necessary that this amount of land should be taken, or whether the condemnation of so large a tract was an abuse of power, was a question the defendants had the right to submit to the court for determination before the jury was called upon to determine the amount that should be paid for the lands taken. This court is fully committed to this rule.

In *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589, where a similar question arose, it is said: "This motion was in the nature of an application for a bill of particulars, which is demandable in all kinds of actions and proceedings where, by reason of the generality of the claim or charge, the adverse party is unable to know, with reasonable certainty, what he is required to meet. (1 Tidd's Practice, 1st Am. ed. 334-336.) The rule applies even to criminal proceedings as well as civil. Wharton, in his work on Criminal Law, (vol. 3, sec. 3156,) says: 'Whenever the indictment is so general as to give the defend-

ant inadequate notice of the charge he is expected to meet, the court will, on his application, require the prosecution to furnish him a bill of particulars of the evidence intended to be relied on.' The practice in this respect is founded on the clearest principles of justice, and should not be departed from in any case where the circumstances require an application of the principle. The principle, as applicable to condemnation proceedings, was first recognized by this court in *Railroad Co.* v. *Kidder,* 21 Ill. 131, which is cited with approval in *Railroad Co.* v. *Railway Co.* 105 id. 388. It is true, the direct question whether a defendant may, as a matter of right, demand specifications of the character of the improvement proposed to be made, was not presented in either of these cases, but they do hold that the petitioner has the right to introduce them on his own motion, and if this may be done, *a fortiori* the defendant has the right to demand them when they are essential to a proper understanding of the case."

Other cases holding the same rule might be cited, but the doctrine is so well settled that the citation of other cases is not deemed necessary.

The land sought to be condemned was for a right of way for the main channel and its necessary adjuncts for the proposed work. But without the plans and specifications, how could the court determine what was necessary or what was really required? If it was necessary that the entire strip should be taken, had the plans and specifications been produced, the court, from their inspection, and from such other evidence as might have been submitted on the question, might, without any difficulty, have determined the question, but in the absence of the plans the court had no *data* before it from which it could determine what amount of land was necessary or needed for the construction of the work.

But it is said the motion of defendants was not made in apt time, and for that reason it was properly overruled. The cause was set for trial on the 18th, in vacation. This was

the first opportunity the defendants had to take any steps in the case before the court. The motion was made on that day before any witnesses had been sworn or examined in the case. The jury had been selected, it is true, but no evidence had been introduced. It is true that an application of this character is addressed to the court, and should, as a general rule, be made before a trial of the issue made by the petition has begun; but we are not prepared to hold that the defendants had no right to make the application after the jury had been selected. Perhaps it would be a better practice to make the application before the jury was selected, but we are aware of no rule of law that requires it. Indeed, it was not suggested in the circuit court, when the motion was heard, that it was made too late, nor was it denied on that ground.

It is also said that no necessity exists for a production of plans, where, as in this case, the entire tract owned by a defendant is to be taken. We do not concur in that view. It was necessary for the plans to be produced so that the court might determine whether the amount of land proposed to be taken was grossly in excess of the amount necessary to be taken to construct the work, and for this purpose it was immaterial whether the whole or only a certain part of a tract was to be taken.

It appeared on the trial that the jury, after viewing the premises involved, were taken upon and examined another tract of land in the same locality, and this is relied upon as error. In the trial of a case of this character, section 9 of chapter 47 of our statute provides "that the jury shall, at the request of either party, go upon the land sought to be taken or damaged and examine the same, and after hearing the proof offered, make their report, in writing." It is under this statute that the jury made the view under consideration, and as the statute contains no provision authorizing the jury to view other lands in the locality of the lands sought to be condemned, we do not think they had any authority to do so.

The proceeding being under the statute must conform to the statute. It is true, the jury were not bound to close their eyes as respects the location and quality of other lands in the immediate neighborhood, but they had no right to go upon and view other lands as they did the lands embraced in the petition.

It is said appellants were present when the view was made, and made no objection. The record does not show that they were all present. But of what avail would have been their objection had they all been present and objected? The jury were in charge of the sheriff. He had no right to determine any question which might be raised. His duty was merely to take the jury on the premises involved so that they could make the view, and see that they were not interfered with, and that no undue influence was brought to bear to affect their judgment, and when they had made the view return them into court.

It has, however, been suggested, that respondents having proceeded with the trial with knowledge that the jury had viewed other premises, waived all objection to the jury or verdict on that ground. If a juror has been guilty of misconduct during the progress of a trial, and the fact has become known to counsel, and no objection is made until after the trial has closed, it may be that it would then be too late to take advantage of the irregularity. But that principle has no application here. The jury in a condemnation case have the right, where they have viewed the premises sought to be condemned, to take into account such facts as they have learned from the view, and consider such facts in connection with the other evidence in the case in making up their verdict. The view, therefore, is in the nature of evidence introduced before the jury, and the view of other premises not involved in this case was but the introduction of improper evidence before the jury at a time and place where no opportunity was given to object. This record shows that the jury were taken to and viewed property not involved in this case, without the consent of the

defendants. The view of other property was doubtless caused to be made for the purpose of aiding the petitioner, and that view, no doubt, had a prejudicial effect on the rights of the defendants.

On the trial it was claimed by the appellants that the land was underlaid with stone, and evidence was introduced to substantiate this claim. In rebuttal, petitioner called a witness and examined him at some length as to the existence of stone on the lands. An objection was interposed to a question propounded to the witness, that it was not rebuttal evidence, and in passing on the question the court incidentally remarked: "I have no doubt but it is clearly competent. I have been over the ground, and any man going over that ground would not be looking for stone. I think all you are called upon is to take the surface appearance of the ground." Other remarks of a similar character were made by the court and objected to by the appellants. The court, on the trial of a cause, has no right to tell the jury what he may know, of his own knowledge, in regard to a fact in issue between the parties, but in ruling on the admission of evidence the court may allude to other evidence in the record in explanation of his decision, and it often seems necessary to do so. But the court should use great caution in expressing an opinion on any controverted question of fact in issue which it is the province of the jury to determine. But, as held in *Birmingham Fire Ins. Co.* v. *Pulver*, 126 Ill. 329, "every unguarded expression of the court in stating reasons to counsel for its rulings can not be regarded as error sufficient to work a reversal." The remarks of the court were not proper, but as the judgment will have to be reversed on other grounds we do not find it necessary in this case to determine whether they were so prejudicial to appellants as to furnish ground for a reversal.

Objection is made in the argument that petitioner's witnesses were not confined to the value of the lands at the date of the filing of the petition, but were allowed to state the

value at the time they examined the lands,—a week or two before the trial. Had the objection been made when the evidence was introduced, the court, no doubt, would have confined the evidence of value to the date the petition was filed, but the objection was not then interposed, and it now comes too late. Moreover, it is not claimed that the value differed on the day of trial, or two weeks before, from the value on the day the petition was filed.

It is also claimed that the court erred in refusing to allow the witness Walker to testify what kind of stone was on the island. Upon looking into the record it will be found that on cross-examination the witness testified fully on this point, and hence the objection was obviated.

It is also claimed that the court erred in giving petitioner's third and sixth instructions. The third instruction directed the jury to take into consideration, in determining the value of the property, "the evidence of all the witnesses and the evidence of sales, as well as the knowledge the jury may have derived from an examination" of the premises,—that "they are to consider all the evidence in the case." The first objection to the instruction is, that it directs the jury to consider the evidence of all the witnesses, while a part of the evidence offered and admitted had been excluded by the court. We think this objection is obviated by petitioner's fourteenth instruction, which expressly directed the jury to disregard any evidence introduced and stricken out. It is also objected that the instruction directs the jury to consider the evidence of sales, without confining the consideration to sales of similar property. But this is qualified by the fifth instruction, which expressly directs the jury to consider the evidence of sales of property similarly situated. When the instructions are considered together we do not think the jury could be misled.

The sixth instruction in substance directed the jury that they are not "to consider the price that property would sell for under special or extraordinary circumstances, but its fair

cash market value if sold in the market under ordinary circumstances." The principle announced was approved in *Brown* v. *Calumet River Railway Co.* 125 Ill. 600, and we see no reason for changing the rule there declared.

It is also claimed that the court erred in refusing defendants' tenth instruction. All that was said in the instruction was very proper to be submitted to the jury in an argument on the evidence as respects the degree of weight to be given to the witness, but at the same time we think the court, whose duty it is to instruct as to questions of law, might very properly, as it did, refuse the instruction.

As this case will have to be submitted to another jury, we express no opinion on the evidence contained in the record.

For the error indicated, the judgment will be reversed and the cause remanded.                      *Judgment reversed.*