JONATHAN PRATHER

*v.*

THE CHICAGO SOUTHERN RAILWAY COMPANY.

*Opinion filed April 17, 1906.*

1. EMINENT DOMAIN—*what evidence authorizes taking strip 125 feet wide for right of way.* Proof that it was necessary to take a strip of land 125 feet wide for railroad right of way through the defendant's land for "borrow purposes," in order to take out material for fills when the cuts were insufficient to furnish the same, and also for the purpose of making proper drainage, brings the case within clause 4 of section 19 of the Railroad act of 1891, relating to cuttings and embankments.

2. SAME—*compensation for land taken is independent of any consequential damages to the land not taken.* The true measure of compensation for a strip of farm land taken for railroad right of way is its fair cash market value independent of any consequential damages to other lands not taken.

3. SAME—*when question is properly rejected as leading.* Where a witness for the defendant in condemnation testifies that he is not very familiar with the defendant's farm but thinks it is worth a certain price per acre, the question, "Wouldn't it be worth more than that upon the market?" is properly rejected as leading.

4. SAME—*effect where right of way cuts off farm buildings.* In condemnation, where the petitioner's right of way divides the defendant's land so as to leave one tract without farm buildings, the damage to such land is not what the land would be worth without the buildings, but what would be the damage thereto by the fact that the tract having farm buildings thereon was separated from the other tract by the railroad, which rendered access to such buildings less convenient.

5. SAME—*what does not justify question as to loaning money on land.* The fact that the petitioner's right of way divides the defendant's farm into two parts, one of which borders on a highway while the larger part does not, does not justify the question whether or not loan companies would loan money on land having no access to a highway, since it is the railroad company's duty to place farm crossings over its railroad whereby access may be had to highways.

6. SAME—*what evidence is not admissible to discredit witness.* To discredit the statements of a witness for the petitioner as to the depreciation in value of defendant's farm, it is not competent to show that the witness had previously stated in a conversation with a certain person that he would not have a railroad run through his farm for $20 an acre.

7. INSTRUCTIONS—*when inaccuracy of instruction is harmless.* Inaccuracy of an instruction upon the question of the burden of proof of damages to land not taken for petitioner's right of way, in stating that "the presumption of law is that there is no damage to the adjacent land," is harmless, where the verdict shows that even if the jury considered such statement they concluded that the presumption was overcome.

8. SAME—*when instruction as to effect of stipulation is not improper.* In condemnation, an instruction to the effect that certain stipulations filed by the petitioner by which it bound itself to construct and operate its road in a particular manner should be taken into account by the jury in arriving at their verdict is not improper.

9. SAME—*when an instruction as to disregarding testimony not based upon stipulations is proper.* Where the petitioner in condemnation has bound itself, by stipulation, to do certain things not required by the statute, it has a right to have the jury instructed that if they believe that any witnesses who have testified to damages to adjacent land have not based their evidence upon such additional requirements and stipulations the jury may disregard such evidence so far as it is not based upon the stipulation.

APPEAL from the County Court of Vermilion county; the Hon. S. MURRAY CLARK, Judge, presiding.

H. M. STEELY, for appellant.

BUCKINGHAM & DYSERT, (RITSHER, MONTGOMERY & HART, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a proceeding under the Eminent Domain act, brought by the appellee company against the appellant and other land owners to condemn a right of way for its proposed railroad. A cross-petition was filed by appellant asking that alleged damages to land not taken be assessed and allowed.

The lands of the appellant are situate in sections 9 and 10 in town 22, north, range 11, west of the second principal meridian, in Vermilion county, 200 acres thereof being in section 10 and 122½ acres being in section 9, and were divided by a public highway on the section line between said sections 9 and 10. The appellee company sought to condemn a right

of way 100 feet in width commencing 211.5 feet east of the section line at the south side of section 10 and extending north one-half mile, and from thence on north one-fourth of a mile a right of way 125 feet in width, leaving a strip of land belonging to the appellant of the width of 214.8 feet east of said section line, at the north end of the tract. The farm buildings of the appellant are all situate at the north end, near the highway, and on the 122-acre tract lying west of the public highway. The right of way so sought to be taken divided the 200-acre tract of land east of the highway so that a narrow strip three-fourths of a mile long, containing about 24 acres, lies between the proposed right of way and the highway.

At the close of the preliminary proof appellant moved the court for an order confining appellee to a right of way 100 feet in width throughout appellant's farm, and presented to the court two propositions to be held as the law applicable to that contention, one of which was refused and the other held to be the law, to which refusal the appellant excepted. A hearing was had before the court and a jury upon the questions raised by the petition and the cross-petition, and after the evidence was heard the jury were taken to view the land, and thereafter returned a verdict fixing the compensation of appellant for land taken at $1260 and for damages to lands not taken at $2147, making a total of $3407, and judgment was entered on the verdict for that amount. This is an appeal perfected to bring such judgment into review, and as grounds for reversal appellant urges the following: (1) The ruling of the court in allowing plaintiff to take a right of way through the south-west quarter of the north-west quarter of section 10 more than 100 feet wide; (2) the rulings of the court on the admission and exclusion of evidence; (3) that the verdict and report of the jury is against the weight and preponderance of the evidence; (4) that the court erred in the giving, refusing and modifying of instructions; (5) that the compensation and damages awarded are

each inadequate in amount; (6) that the court erred in refusing to grant to appellant a new trial of this cause.

The proposition submitted to the court to be held as the law, and refused, is as follows: "The court holds it to be the law, that in this case the preliminary proof is not sufficient to warrant the taking, for right of way purposes through the lands of the defendant, Jonathan Prather, a strip of land more than 100 feet in width."

The appellant insists that both the petition and the evidence disclosed that the 25 feet sought to be taken in excess of the 100 feet for right of way was merely a matter of convenience and economy to the appellee company, and not a matter of necessity.

Clause 4 of section 20 of chapter 114 (Hurd's Stat. 1903, p. 1437,) provides that a railroad company may take a right of way 100 feet in width, "and for the purpose of cuttings and embankments to take as much more land as may be necessary for the proper construction and security of the railway." It is stated in the petition that it is necessary to take and appropriate a strip of land 125 feet in width through this particular portion of appellant's land. Rollin Saulsbury, a civil engineer in the employ of the appellee company, testified that it was necessary to take the 125-foot strip for railway purposes,—that is, for "borrow" purposes,—and the witness then explained that by "borrow" purposes he meant to "take material" from one side of the track to make the "fill" when the "cut" itself would not furnish sufficient material, and further testified that this was also done to make proper drainage. We think this testimony, being all upon the point, brought the case within the terms of said clause 4 of said section 20 of chapter 114, and authorized the company to take such land in addition to the 100-foot right of way. The proposition was properly rejected.

Two of the witnesses for the appellee, in their direct examination, testified that the strip of land proposed to be taken was worth from $110 to $125 per acre, and on cross-exami-

nation stated that that estimate was made on the market value of the whole farm. The court then refused to allow the following questions propounded to these witnesses on cross-examination to be answered, viz.: "Well, now then, is it worth any more when you take a strip that way 100 feet wide through there?" and, "To take from a man a long strip about 100 feet wide and three-fourths of a mile long, of the kind of land that you know that to be, wouldn't it be worth more than $125 per acre?" We find no error in the ruling of the court in this respect. The questions as propounded called for the opinions of the witnesses as to the value of the strip of land when taken out of a farm as a strip, which also included in it, as an element of damage, the injury to the remainder of the farm. The only measure of compensation for the strip of land taken was its fair cash market value, independent of any consequential damages to lands not taken.

One witness on behalf of the appellant had testified that he was not very familiar with appellant's farm, but that he thought it was worth $115 per acre. Thereupon he was asked, "Wouldn't it be worth more than that upon the market?" An objection by appellee was sustained to such question, and this action of the court is urged as for error. We think the question was properly rejected because leading and suggestive.

The appellee company produced testimony tending to show that the tract of land containing 122 and a fraction acres lying west of the highway could be sold in the market, after the construction of the railroad, for as much as it could had the railroad not been constructed, and that it could be considered as a separate and distinct farm. The appellant proffered testimony to the effect that if the 122-acre tract was separated from the remainder of the farm and sold, the tract east of the highway would be deprived of all farm buildings and the damage thereto greatly increased. The construction of the railroad would not separate the tract west of the highway from the remainder of the farm and deprive

the remainder of the farm of the buildings and improvements. The only effect the construction of the railroad had as to the buildings was to make access from that part of the farm where the buildings were located, to the other parts, more difficult and to render the farm more inconvenient for farming. These matters were to be determined, under the cross-petition of appellant, for an award of damages to lands not taken, and on that issue such inconvenience and lack of ready access would enter into the investigation as affecting the market value of the land not taken. The damage that would result to the land east of the highway, to be considered in this case, was not what the land would be worth without any buildings, but what would be the damage by reason of having the tract with the buildings on it, separated from the rest of the farm by the railroad. Any damage that would result from entirely depriving the tract east of the highway of all the buildings was too remote to be considered in this case, for the appellee company, by the construction of the railroad, would in nowise bring about that result. The evidence was therefore properly excluded.

The court refused to permit a witness called on behalf of the appellant to answer whether or not loan companies would loan money on land having no access to a highway, the question having relation to the portion of appellant's land lying east of the right of way of the railroad. We can not see that this evidence was material. No such facts as were assumed by the question existed. The stipulation of the appellee company, and also the statute, required the appellee company to place crossings over its line of railroad whereby the appellant might be able to reach the highway.

On the cross-examination of one of the witnesses for the appellee it was sought to discredit his testimony as to the depreciation in value of that part of the lands of appellant lying east of the public highway, by showing that he had previously, in a conversation with a Mr. Smith, stated that he would not have a railroad run through his farm for $20

per acre. This the court properly refused to allow. What the witness had previously said with reference to his own farm was immaterial, and would not be of any value in discrediting the opinion he had given as to thè damages done to the lands of the appellant by the construction of the appellee's railroad.

Charles Tomlinson, a witness introduced by the appellee company in rebuttal, on cross-examination stated that there was a pasture at the north end of the tract of land lying east of the public highway, and stated that it would be inconvenient to have the pasture lying open and unfenced for six months while the railroad was being constructed. The court, on motion of the appellee, struck out this latter statement of the witness, and the appellant contends this was error. The witness had made no statement in chief with reference to the pasture. The pasture had been leased by the appellant, and the tenant was entitled to the possession and use thereof for nearly a year, and the tenant was not a party to the proceeding. The statement of the witness which was excluded had some reference to the damages to the lands not taken, and that should have been the subject of testimony given by the appellant in his behalf under his cross-petition, as the burden was on him to produce such proof. He had no right to go into that question on cross-examination of the appellee's witness in rebuttal except so far as it was properly cross-examination, and we think the exclusion of the statement should not reverse the judgment. That there was a pasture there was shown by other testimony and not at all contradicted.

Other objections to the action of the court in ruling as to the admissibility of evidence had reference entirely to the lands of other defendants below who are not parties to this appeal, and of which appellant cannot be heard to complain.

Appellant urges that the verdict for compensation for land taken, and also for damage to the lands not taken, is inadequate and against the weight of the evidence. Many

witnesses testified to the value of the land taken and also as to the damages to the lands not taken, and the evidence on these points was very conflicting. The lowest value, per acre, for land taken was $110 and the highest $140. The lowest estimate as to the damages to lands not taken was a total of $1900, while the highest estimate of such damages was $7000. The jury viewed the premises and returned a verdict in the sum of $1260 for the land taken and $2147 damages to the lands not taken, making a total of $3407. The verdict of the jury was fairly within the range of the testimony as given by the witness, and is not probably inadequate. The rule is well settled that where the evidence is conflicting and the jury view the premises, the verdict will not be disturbed as excessive or inadequate unless it is manifestly against the weight of all of the evidence. *Brown* v. *Illinois, Iowa and Minnesota Railway Co.* 209 Ill. 402; *St. Louis and O'Fallon Railway Co.* v. *Union Trust and Savings Bank,* id. 457.

Complaint is made that the court erred in giving instructions 3, 7, 11, 15 and 16, at the instance of the appellee company. All of these instructions are general, and were intended to apply to the lands of all of the defendants below.

The objection urged against instruction No. 3 is, that after stating to the jury that the actual fair cash market value of the land taken was the proper measure of damages, it told the jury that they should at all times "keep in mind the interest to be taken in the lands." It is insisted that this instruction told the jury that "this railroad company is not taking the fee,—it is taking an interest less than the fee; the market value of the fee is not the measure of damages as to the land taken." We do not think this instruction could have been so misunderstood by the jury. It merely stated that in this case, (there being a number of defendants, some owning interests less than a fee, such as life tenants, lessees, etc.,) when considering the measure of damages, the jury should keep in mind the interests owned by each of the defendants, respectively.

Instruction No. 7 was as follows:

"You are instructed that if you believe, from the evidence, that a large body of land belonging to any defendant adjoins the proposed railroad, and that such large body of land will be worth in the market as much per acre after the construction of the proposed railroad as it now is, then you have no right to assess any damages as to such large body of land adjoining such railroad."

The argument of appellant is, that this instruction told the jury that if they believed the 166 acres of land lying east of the railroad could be sold for as much in the market after as before the construction of the railroad, then they should allow no damages whatever as to this land; that it did not apply to the whole farm of appellant, and stated that the owner was compelled to divide his farm into tracts. The instruction, as we have stated, was general. It did not refer to the 166-acre tract of land in particular, but referred to any large tract of land adjoining the railroad. This clearly meant, and the jury must have so understood it to mean, the entire tract owned by the appellant lying east of the highway. It was not erroneous in that it did not refer, if such be the case, to the 122½ acre tract of appellant's land lying west of the public highway, for the only proof in the record as to this tract shows it was not damaged at all.

Instruction No. 11 complained of is as follows:

"You are instructed that the presumption of law is that there is no damage to the adjacent land by reason of the construction of a railroad on the right of way taken, and before you are justified in giving any such damages the party claiming the same must first establish and prove the same by a preponderance of the evidence."

The burden of proving that lands not taken have been damaged is on the land owner, and the statement in the instruction that "the presumption of law is that there is no damage to the adjacent land" is not accurate. But this error is harmless in character. It is clear it did not affect the verdict

of the jury, for, even if they considered that portion of the instruction, they necessarily came to the conclusion that the supposed presumption of law was overcome.

Instruction No. 15 is to the effect that certain stipulations had been filed by the appellee company which bound it to construct and operate its road in compliance with said stipulations, and told the jury that "they should take them [the stipulations] into account in arriving at their verdict." The objection of the appellant to the instruction is, that it intimated to the jury that the stipulations were such as ought to decrease the damages to appellant's land not taken. This instruction substantially stated the correct rule, and we do not think it could have prejudiced the rights of appellant. It was proper for the jury, in considering of their verdict, to take into consideration the stipulations, together with the instruction thereon, which left the effect of compliance with said stipulations, as to the damages, to the determination of the jury.

The appellant admits that the appellee company, by the stipulations, agreed to do certain things not required of it by the statute, and the appellee had the right to have the jury so instructed, as was done by instruction No. 16, which concluded as follows: "You are further instructed that if in this case you believe that any witnesses who have testified to damages to adjacent land have not based their evidence upon such additional requirements and stipulations, then and in that case you should disregard such evidence in so far as it has failed to be based upon such special stipulations." Objection is made to this clause that it invaded the province of the jury, in that it instructed them that no weight should be given to the testimony of any witnesses who, in estimating appellant's damages, did not base such estimate upon the stipulations. That stipulations had been entered into and were filed in the case was not a disputed fact, and was one of the circumstances that should have been considered by the witnesses in arriving at their opinions as to the amount of

damages sustained by the appellant. The instruction merely stated that if a witness had not based his opinion on all of the facts affecting the damages, then his testimony should be disregarded to that extent. The instruction did not invade the province of the jury by telling them that credibility or weight should be given to the testimony of any particular witness or witnesses, but was an instruction to them not to consider certain evidence which was incompetent, not being based upon the facts in the case.

It is also insisted the court erred in refusing to give instructions Nos. 25, 27, 28 and 29, asked in behalf of appellant. Refused instruction 25 was, in substance, "that if the jury believed, from the evidence, that the proposed railroad would interfere with the lines of tile drainage of any owner, and by reason thereof damage his drainage," etc., such fact was proper to be considered in ascertaining the damages to be allowed such owner. The stipulation filed by the appellee company bound it "not to disturb any existing line of tile, * * * and that whenever a cut occurs and any line of tile is intersected, then the drainage passing through the same shall be conveyed in the right of way into the next natural drainage way." This stipulation, in effect, eliminated any such element of damage from the case. Instruction No. 27 was properly refused by the court, and is disposed of by what has been said herein with reference to the action of the court in passing upon the propositions of law. Instruction No. 28, refused, is substantially the same as instruction No. 13 given at appellant's request; and refused instruction No. 29 is identically the same as No. 23 given in the same behalf. ·

One other alleged error is argued in the brief of counsel for appellant, but as no error relating thereto is assigned on the record we cannot consider the discussion.

We have carefully reviewed the record and find it free from error substantial in character, and the judgment must therefore be, and is, affirmed.    *Judgment affirmed.*