**CITY OF TULSA v. WILLIAMS et al.**

No. 14514—Opinion Filed Feb. 5, 1924.

Rehearing Denied July 1, 1924.

1. **Eminent Domain—Establishment of City Reservoir Outside Corporate Limits — Condemnation of Land—Necessity.**

The right to establish and create a water

reservoir, either within or without the corporate limits of municipal corporations, has been conferred upon municipal corporations by the law of Oklahoma; and the necessity therefor and the location thereof are legislative questions for the law-making power of such municipalities and are not for the courts; but when the question is raised as to the necessity for taking any particular piece of property for the public use, such question presents matter for judicial determination.

**2. Same—Right to Take Land Above High Water Line.**

Where a municipal corporation seeks to create a waterworks plant and water reservoir outside of its corporate limits, it has a right, under the law of eminent domain, to condemn such land as shall be submerged by its reservoir up to the high water line; and also has the right to condemn such margin of land above the high water line of its reservoir as may be needed, where the perpetual use and absolute control thereof is required, to protect its water supply from pollution and for policing and patrolling the shore of its reservoir; but how much margin above the high water line should be taken for such purpose is a judicial question to be determined by the court upon evidence of the necessity.

**3. Same—Reversal of Judgment.**

Record examined, and held, that the judgment of the trial court that petitioner has no right, under the law, to condemn and take over the perpetual use and absolute control of any of the land described lying above the high water line of its reservoir, is erroneous; that under the pleadings it becomes a question of fact for judicial determination as to how much margin of land, if any, is needed above the high water line in the reservoir for the proper protection of petitioner's water supply; that the judgment of the trial court should be reversed, with directions to grant the petitioner a new trial and to proceed in a manner not inconsistent with this opinion to determine what, if any of the lands sought to be condemned above the high water line are necessary for the proper protection of petitioner's water supply and reservoir.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4

Error from District Court, Mayes County: A. C. Brewster, Judge.

Proceeding brought by the city of Tulsa, a municipal corporation, in the district court of Mayes county, against certain landowners, for the purpose of condemnation of certain lands located in Mayes county for waterworks purposes to furnish water supply to the said city of Tulsa and the inhabitants thereof; and for the appointment of commissioners to view the property and assess damages to the owners of the property sought to be taken. The proceeding seeks to condemn property for public use both below and above the high water line in a water reservoir to be created in part upon the lands sought to be condemned.

The order of the court upheld the right of the city of Tulsa to condemn lands below the high water line of such reservoir, and appoint commissioners to view and determine the value thereof. The court denied the right of the city of Tulsa, as a matter of law, to condemn lands above the high water line. From the order and judgment of the district court denying the right to condemn the property above the high water line sought to be condemned, the city of Tulsa prosecutes this appeal and makes the owners of the property defendants in error.

Judgment of the district court of Mayes county denying the right of the city of Tulsa as a matter of law to condemn the property above the high water line, reversed, with directions.

I. J. Underwood, City Attorney, W. B. Robinson, W. F. Tucker, and Langley & Langley, for plaintiff in error.

Harry Seaton and Leahy & Brewster, for defendants in error.

Opinion by SHACKELFORD, C. For convenience in this opinion, the city of Tulsa, plaintiff in error, will be referred to as petitioner, and the landowners, defendants in error, will be referred to as respondents.

The petitioner began this proceeding in the district court of Mayes county by filing its petition therein on the 2nd of December, 1922. The petitioner seeks to condemn certain lands in Mayes county, not within petitioner's corporate limits, for the purpose of creating a water reservoir to supply water to petitioner and the inhabitants thereof. In the petition the land sought to be condemned is set out and described by legal subdivisions of certain sections, and the names of the owners given. Due and legal notice was given to the land owners and their appearances are shown of record. It appears from this proceeding that it is the purpose of the petitioner to build an extensive dam across a nonnavigable stream running through Mayes county, known as Spavinaw creek, for the purpose of impounding the waters of said creek so as to create a water supply for petitioner and its inhabitants. It appears that the damming and impounding the waters of said creek will create a reservoir of water or lake, covering many hundreds of acres of land, and to be carried by means of con-

duits leading from such reservoir, and into the petitioner's confines. The petitioner seeks to acquire the fee-simple title by purchase, or the perpetual use and control by condemnation proceedings, of such lands as may be needed for the erection of its dam across said Spavinaw creek, in Mayes county, and for the purpose of erecting such buildings and water equipment as may be needed to effectuate the purposes for which the reservoir is being created; also a right of way over, under, and across such lands as may be needed for the purpose of laying its conduits, water pipes, and pipe lines; and for building and operating a temporary railroad to be used for construction purposes; also as to all lands which will be necessary to submerge by impounding the water of the said creek; also as to all lands which may lie between the low water line and the high water line when the reservoir is complete and flooded; also as to all lands lying within the watershed above the high water line that may be needed to protect the water impounded in the reservoir from pollution, or such as may be needed for the purpose of fencing, policing, and protecting the reservoir and the water therein.

The right to acquire the perpetual use and control of the property by condemnation proceedings is not denied, except as to such land as lies above the flood stage or maximum high water line which is desired and alleged to be necessary to have to prevent pollution of the water in the reservoir, and needed for fencing the reservoir and patrolling the water line and extending police protection over the petitioner's water supply. Every other question has been eliminated.

In the petition it is alleged, in effect, that the perpetual use and exclusive control of the lands described, which may be lying above the high water line, are necessary for the public use for the purpose of properly protecting and safe-guarding the water to be impounded in petitioner's water reservoir so as to, as nearly as may be, insure to petitioner and the inhabitants thereof, a supply of pure water. It is alleged that the legislative arm of the city government of the city of Tulsa regularly adopted a resolution declaring the lands sought to be condemned necessary for the purposes for which the condemnation is sought, the lands being specifically described in such resolution, not by metes and bounds, but by legal subdivisions of the federal survey; and a copy of the resolution of necessity is attached to the petition. The respondents deny that it is necessary for the petitioner to acquire the perpetual use and absolute control of such

described lands as lie above the high water line, for the purpose of preventing pollution of the water supply, or for the purpose of policing and patrolling the shore and borders of the reservoir. They further deny that there is any power in the court in condemnation proceedings to invest the petitioner with perpetual use and absolute control of the lands outside the high water line of petitioner's water reservoir for the purposes for which the condemnation is sought.

Upon a trial of the cause petitioner put in proof the resolution adopted by the legislative department of the city of Tulsa, declaring the necessity for petitioner to have the lands sought to be condemned both below and above the high water line of petitioner's reservoir, and likewise offered the testimony of expert witnesses to show that the land sought above the high water line is necessary for the protection of the petitioner's water supply from pollution, and for patrolling and policing the shores of the reservoir.

The trial court upheld the rights of the petitioner to acquire in condemnation proceedings the perpetual use and absolute control of the land described lying below the high water line of the reservoir; and appointed appraisers to view such land and fix the damage to the respective land owners; and also upheld the right of the petitioner to take certain lands not within the high water line, needed for buildings to be used in connection with the water project. No complaint is made by either party with reference to that part of the holding and judgment. The court found that as a matter of law the petitioner is not authorized to acquire by condemnation proceedings any of the property described lying above the petitioner's high water line, except such as is needed for the buildings. That part of the court's findings is as follows:

"The court further finds that the said petitioner herein is not authorized by the laws of the state of Oklahoma to acquire by condemnation proceedings any of the lands lying above the high water line of the lake heretofore mentioned, and which it is alleged are necessary for the protection of said reservoir, except certain lots in the West Addition to the town of Spavinaw, Oklahoma, which lots, although not being overflowed, are needed by said petitioner for construction purposes in building the dam to be constructed at the point indicated in said petition, over the protests and objections of such landowners."

The petitioner prosecutes appeal from that part of the findings and judgment of the trial court which deny the petitioner the

right, as a matter of law, to condemn property above the high water line of its reservoir, covered by the resolution of necessity and alleged in the petition to be necessary for the proper protection of the reservoir and the water supply of the petitioner.

It is the contention upon the part of the petitioner, the city of Tulsa, that it, as a municipal corporation under the laws of the state, and under its charter, has the right to acquire property for the public use as a water reservoir, and that the matter of determining what property or how much is a legislative question to be determined by the legislative department of the petitioner's own government; and is not a question for the state court. That it is not a judicial question, but when the legislative department of the city government has adopted a resolution declaring the necessity for the taking over of certain private property for the public use and benefit of the inhabitants within the corporate limits of the city, no question of necessity is left for judicial determination.

The contention is, in effect, that the court in which the proceeding is brought is powerless to make judicial inquiry beyond determining whether the petitioner is a proper government organization that is authorized to condemn private property for the public use and benefit of its inhabitants within its corporate limits, and further whether the legislative department of its government has properly adopted the resolution of necessity covering the private property sought to be condemned; that when these matters have been determined in favor of the petitioner the condemnation of the property sought follows, unless fraud or ulterior motives in taking over the property can be affirmatively shown by the property owner.

The contention made by the respondents is, in effect, that no power has been conferred upon the petitioner, as a municipal corporation, to condemn private property outside its own corporate limits for the water reservoir, beyond the maximum high water line, except site for dam, necessary buildings, and right of way for conduits, etc.

We feel, upon consideration of the case presented here, that neither view is correct. The contentions made by the petitioner are too far-reaching in their consequences. To give the members of the city legislature power to investigate the necessity and determine that upon facts gained from their ex parte investigation, and so declare by resolution, and there entirely end the matter, and close the door to all judicial injuiry based upon the same facts or upon other facts gleaned from a hearing of the property owner in presenting his side of the case, would be investing the city council with not only legislative power, but the power to make decisions affecting the interests of property owners beyond their confines and take away from the owner all right to be heard except upon the question of damages only, and leave the matter wholly to men whose judgments might be biased and warped by their desire to gain advantages for the municipal corporation which they represent, and perhaps fix the limit at the city's ability to pay and do rank injustice to the owner whose property is being condemned, without giving him a hearing upon the matter; and might easily become the subject of both injustice and abuse. And the contentions made by the respondents would place too great restrictions upon the water project of the petioner to make it effective for the purposes intended. It is not contended, and indeed cannot be successfully contended otherwise than that the petitioner and its inhabitants have the right to construct a water reservoir from which it may have an adequate supply of water, as nearly pure as human ingenuity can deliver it. To effect such purpose and avail itself of such right, something more is needed than the absolute control of the water basin up to the maximum flood water stage. It is a matter of common knowledge that surface water will drain from the top of the watershed downward and find its way into any water reservoir that may be constructed, and that such surface drainage is calculated to and does carry with it many impurities and much deleterious matter, alive with disease germs, into the reservoir, and water supply which ultimately find their way to water consumers, and are a menace to physical well-being, and harbingers of disease and death for such consumers. It will, no doubt, be necessary for the petitioner to keep constant and vigilant watch over the borders of its water reservoir, not only at the high water line, but above the high water line, for the purpose of reducing to minimum dangers that arise from the intake of surface water coming down from the hills following rainstorms. In all probability it will be necessary, and it appears from this record that it is in contemplation to build a substantial fence around the reservoir as a sort of dead line to keep away stray animals and mischievous human beings from the edge of the reservoir. Such fence would have less effect built at the high water line than it would have, if built some distance from it, and it is quite likely that the land lines would be little or no indication about where such deadline should be drawn. It is conceivable that in

many places only a short distance from the high water line would be sufficient, while in many other places a much greater distance from the high water line would be required. This of necessity is a question of fact as to the necessary line of absolute control above the high water line, on each piece of land sought to be condemned, and is a matter for judicial determination based upon evidence.

There is no doubt that the law of eminent domain authorizes the petitioner to fix the situs of its water reservoir. It is entitled to a water supply, and has a right to procure it from any available source. When the city government has chosen the situs for a reservoir, the courts of the state will not inquire into the matter for the purpose of demanding why some other situs was not chosen. When the petitioner decided on impounding the waters of Spavinaw creek by building a dam at a certain point and to a certain height for the purpose of creating a reservoir for the public use, and decided how much land would be overflowed and what lands would be needed on which to erect necessary buildings and what parcels of land would be needed for a right of way for its water lines, and what lands would be needed for the purpose of policing and patrolling the right of way of water lines and borders of its reservoir, it based such decision upon facts learned from inspections and surveys made; and without reference to the rights and wishes of the land owners. When the legislative arm of the city government adopted the resolution of necessity, it amounted to an ex parte trial of the question of necessity, and the legislation was based upon the facts gathered by investigation; and in many respects such legislation is a final determination of the question of necessity and leaves nothing for judicial determination except the compensation to the land owners for their property.

The petitioner's necessity for a water reservoir, and where it shall be located, where the dam across Spavinaw creek shall be built, what buildings are to be erected and their location, and the means of conveying the water and the lines over which its conduits are to be constructed, are all matters for legislative determination and when such matters have been legislated upon by the city government there is no matter concerning them for judicial inquiry. As to what lands will be overflowed at low water and flood stage is a matter to be determined by competent engineers and when this is done there is no question but such lands are needed for reservoir purposes. All reasonable men will agree to that, and when such question has been determined there is nothing for judicial inquiry, and the resolution of necessity ends the matter, or at most there is no question except to find if such matter has been determined in such a way as to satisfy the court of the correctness of the determination. But, a point may be reached where the necessity is not conceded by all reasonable men, and when that point is reached, there is a matter for judicial inquiry.

Nichols on Eminent Domain (2nd Ed.) vol. 2, sec. 333, in part says:

"There is, however, at least a theoretical limit beyond which the legislature cannot go. The expediency of constructing a particular public improvement and the extent of the public necessity therefor are clearly not judicial questions; but it is obvious that, if property is taken in ostensible behalf of a public improvement which it can never by any possibility serve, it is being taken for a use that is not public, and the owner's constitutional rights call for protection in the courts. So also the due process clauses protects the individual from spoliation under the guise of legislative enactment, and while it gives the courts no authority to review the acts of the legislature and decide upon the necessity of particular takings, it would protect an individual who was deprived of his property under pretense of eminent domain in ostensible behalf of a public enterprise for which it could not be used. While many courts have used sweeping expressions in the decisions in which they have disclaimed the power of supervising the selection of the site of public improvements, it may be safely said that the courts of the various states would feel bound to interfere to prevent an abuse of the discretion delegated to the legislature by an attempted appropriation of land in utter disregard of the possible necessity of its use, of when the alleged purpose was a cloak to some sinister scheme. * * *"

—citing many authorities.

In City of Chicago v. Lehman (Ill.) 104 N. E. 829, it is said:

"The petition alleged that the lots were necessary for the public use specified, and that was a material allegation which was denied by the defendant. The question whether the sovereign power of eminent domain shall be conferred upon corporations or municipalities to appropriate private property for public use is legislative and not subject to interference by the courts (Chicago, Rock Island & Pacific Railroad Co. v. Town of Lake, 71 Ill. 333), but the question whether the particular property sought to be appropriated is necessary for the public use is for the courts. If the necessity does not exist the land cannot be taken, and the property

owner would be without the protection to which he is entitled if the determination of a corporation, private or municipal, to take his property conclusively settled the necessity of the taking. If that were so, the law would not require any averment of necessity but only an allegation of intention to take the property. The owner of property may challenge the right to take it by denying the averment of necessity and the issue so made is a preliminary one, to be decided by the court. O'Hare v. Chicago, Madison & Northern Railroad Co., 139 Ill. 151, 28 N. E. 923. Under every rule of pleading the burden was upon the petitioner to introduce such evidence as would prima facie, at least, prove the disputed averment. The essential preliminary requisite being the necessity for the appropriation of the land, and that fact being affirmed by the petitioner and denied by the defendant, the burden rested upon the petitioner to show the fact. This is not only in conformity with rules of pleading, but it has been established by the authorities and assumed in all cases in this court. 2 Lewis on Eminent Domain (3d Ed.) 602-609· O'Hare v. Chicago, Madison & Northern Railroad Co., supra; Tedens v. Sanitary District of Chicago, 149 Ill. 87, 36 N. E. 1033: Eddleman v. Union County Traction Co., 217 Ill. 409, 75 N. E. 510; Prather v. Chicago Southern Railway Co., 221 Ill. 190, 77 N. E. 430; Smith v. Claussen Park Drainage District. 229 Ill. 155 N. E. 278; Bell v. Mattoon Water Works & Reservoir Co., 245 Ill. 544, 92 N. E. 352, 173 Am. St. Rep. 338, 19 Ann Cas. 153."

In volume 10, R. C. L. 88, the rule is stated to be:

"Inasmuch as property cannot constitutionally be taken by eminent domain except for the public use, it follows that no more property shall be taken than the public use requires. * * *"

Condemnation of land for waterworks purposes by municipal corporations is authorized by the Constitution of Oklahoma, and by statute. Section 4411, Comp. Stat. 1921, authorizes condemnation of land either inside or outside the corporate limits for such purposes. In the act it is provided that the city shall have the power to "condemn and appropriate in the name and for the use of the city or town any such land located in or outside of the corporate limits thereof as may be necessary for the construction and operation of said waterworks. * * *" The city may take land either in or outside of its corporate limits when the same is necessary for the public use, but there is no language used in the act which even remotely tends to make the legislative branch of the city government the sole arbiter as to what land is necessary, so as to leave no question of

necessity for judicial determination in any case.

From the foregoing we reach the conclusion that the legislative arm of petitioner's city government is not the sole judge as to what property is necessary for its water project above the high water line. Above the high water line it becomes a disputed question as to what land or how much is necessary, and based upon the allegations of petitioner that the land is necessary for the public use, and the denial of the necessity by the landowners, a question of fact is presented for judicial decision based upon evidence. We have no hesitancy in concluding that the petitioner needs the perpetual use and absolute control of some margin of land above the high water line of its reservoir for the proper protection of petitioner's water supply; but how large a margin is necessary is a question for judicial decision based upon evidence submitted upon the issues made in the pleadings. In reaching the conclusion that such margin is necesary we are not unmindful of sections 4418, 4419, and 4420, Comp. Stat. 1921, providing for the creation of a water district and for control thereof; but think the conclusion is the correct one notwithstanding these sections of our statutes. The Oklahoma Legislature in the regular session of 1923 passed an act providing that in building and enlarging waterworks plants a margin of not to exceed 660 feet above the high water line might be appropriated for protection of the reservoir. It seems that this act is not applicable to this case; but it does indicate that the Legislature of our state recognized that some margin is necessary; and it is rather a legislative declaration of a necessity that already existed, than a necessity created by legislative act and based solely and alone upon the act. We think that under the law of eminent domain ·the petitioner has the right to condemn such land above the high water line in its reservoir as may be needed for the protection of its water supply; and that the court was wrong in holding, as a matter of law, that the petitioner has no power to condemn lands above the maximum high water line of its reservoir.

We recommend that the part of the judgment of the trial court in which it was held as a matter of law that petitioner has no power under the law of eminent domain to condemn lands above the high water line of its reservoir, be reversed, with directions to proceed to a determination of what lands are necessary above such high water line for the proper protection of petitioner's water sup-

ply, in a manner not inconsistent with this opinion.

By the Court: It is so ordered.