**STATE ex rel. GREEN, County Atty., v. CONDREN et al.**

No. 27232. Nov. 24, 1936.

Wall & Green, for plaintiff in error.

R. O. Ingle, for defendants in error.

CORN, J. This is an action in the nature of quo warranto originally brought in the district court of Sequoyah county by the state on relation of the county attorney to test the validity of the formation of school district No. 73 in said county, and seeking the restoration of the territory comprising said district to union graded school district No. 1, out of whose territory it was carved by the county superintendent in the formation of said district No. 73. The action is taken against the members of the school board of district No. 73.

The defendants demurred to the plaintiff's petition on the following grounds: (1) That the petition shows that district No. 73 has been recognized as a school district since the year 1921 (15 years), and that plaintiff is estopped from denying its legal existence; (2) that plaintiff had the right to appeal from the order of the county superintendent creating said district in a direct proceeding, and failing to appeal, the order is final and the question cannot be raised in a collateral attack on said action of the county superintendent; (3) that the petition does not state sufficient facts to constitute a cause of action; and (4) that plaintiff's petition does not state a cause of action at law or in equity. The demurrer was sustained, and the plaintiff brings this appeal. The parties will be given the trial court designation herein.

The petition states that union graded school district No. 1 was organized and formed out of school districts numbered 46, 54, and 55; that after said union graded school district No. 1 had been formed and had issued bonds in the sum of $18,000, the county superintendent, "without proper petition, without notice, without election, without jurisdictional acts or facts, without jurisdiction, without authority of law and contrary thereto," attempted to change said district by carving therefrom certain described portion of its territory and organizing the same into the pretended district No. 73, and that this was done without taking cognizance of, or without making any adjustment or apportionment of, the outstanding obligation, and that by reason of said irregularities in the formation of said district the organization of said district is illegal and void ab initio.

In the case of School District No. 44 v. Turner, 13 Okla. 71, 73 P. 952, wherein it was shown that the county superintendent failed to comply with the statute in changing the boundaries of said district, this court, in holding said act of the county superintendent to be a nullity, used the following language:

"Manifestly the county superintendent has no power or jurisdiction to change or alter the boundaries of a school district until the statutory provisions have been strictly complied with. The filing of a petition signed by at least one-third of the qualified electors of such district, and the giving of 20 days' notice are clearly jurisdictional facts. The language of the statute is clear, positive and mandatory. It leaves no discretion with the county superintendent. It follows that the attempted change of the boundaries of the district by the county superintendent, before a proper petition was filed and the statutory notice was given, was an arbitrary exercise of power, wholly unauthorized, and therefore absolutely null and void."

In the case of Cleveland v. School District No. 79, Grady County, 51 Okla. 69, 151 P. 577, where the county superintendent attempted to form a school district from other districts without following the procedure prescribed by the statute, this court said:

"We believe this statute is mandatory, and both the petition and notice were prerequisites and jurisdictional, and where both or either are wanting a school district could not be organized; therefore, the action of the superintendent in attempting to form the district was wholly without authority and void."

The organization of the school district being void because of the irregularities set out in the petition, there is but one question left for consideration, and that is whether the doctrine of estoppel is applicable to a situation of that kind. In 43 C. J. 101, the doctrine as affecting municipal corporations is discussed as follows:

"While neither the doctrine of laches nor of estoppel is ordinarily available as against the government in respect of a public right, and in particular cases the facts have been held insufficient to constitute an estoppel, nevertheless, on the ground of public policy and interest, the state may be precluded from attacking the franchise of a municipal corporation on the ground of illegality in its incorporation where it has failed to raise the question for a considerable period of time, especially where during such period it has acquiesced in and recognized the existence of the municipality."

The doctrine of estoppel by laches as applicable to municipal corporations is discussed and applied in State v. Leatherman, 38 Ark. 81, in which case the Supreme Court of Arkansas held:

"The state may by long acquiescence and continued recognition of a municipal corporation, through her officers, state and county, be precluded from an information to deprive it of franchises long exercised in accordance with the general law."

In that case Mr. Justice Eakin quoted from the case of the People v. Maynard, 15 Mich. 470, the following:

"In public affairs, where the people have organized themselves, under color of law, into the ordinary municipal bodies, and have gone on, year after year, raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence, as on the regularity of their origin, and no ex post facto inquiry can be permitted to undo their corporate existence. Whatever may be the rights of the individuals before such general acquiescence, the corporate standing of the community can be no longer open to question."

The case of Armstrong v. State ex rel., 29 Okla. 161, 116 P. 770, is cited as an authority to the contrary. That case grew out of an attempt to detach certain territory from Comanche and Kiowa counties and to organize the same into a new county under the name of Swanson county. The election carried by a vote of 60 per centum of the entire vote cast at the election, and the Governor, assuming that the vote met the requirements of the Constitution, issued a proclamation declaring the county organized, and the Legislature enacted a law placing it in a judicial district. But the election failed to carry by a vote of 60 per centum of the votes cast in the territory to have been detached from Comanche county, and on that ground an action of quo warranto was brought by the state on relation of the county attorney of Comanche county against the officials of the new county to dissolve the pretended organization. The defendants contended that the proclamation of the Governor and the act of the Legislature were such acts of recognition by the state as would operate as an estoppel of the state to question the validity of the organization. This court held, in an opinion by Mr. Justice Kane, the election insufficient, and held that the acts of recognition by the Governor and the Legislature were insufficient to work an estoppel of the state to inquire into the validity of the pretended organization of Swanson county, on the theory that the question of its validity was a judicial question and the acts of the Governor and of the Legislature were not conclusive, the same being unconstitutional and void, and by reason thereof could not create an estoppel against the state.

The foregoing case is lacking in analogy to the case at bar. Had the state stood by and permitted the new county to exercise its franchise over a period of years, during which time it had issued bonds, made public improvements, and levied taxes for state and municipal purposes, an entirely different situation would have existed, and such an acquiescence would have made the analogy complete.

Ordinarily, estoppel is raised by answer as an affirmative defense, and is pleaded with great particularity, but where the facts constituting an estoppel to the maintenance of the action appear on the face of the petition, the same may be raised by demurrer. Witham v. Gage, 106 Okla. 121, 230 P. 718.

The judgment of the trial court sustaining the demurrer to plaintiff's petition is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, WELCH. PHELPS, and GIBSON, JJ., concur. BUSBY, J., absent.