## NATIONAL UNION FIRE INS. CO. v. McDONALD et al.

No. 16125—Opinion Filed Oct. 19, 1926.

Rehearing Denied Dec. 14, 1926.

1. **Insurance—Scope of Liability on Agent's Fidelity Bond.**

A fidelity bond that provides for the faithful performance of an insurance agent's duty to "pay over to the said company all amounts due or that may become due to it from time to time for moneys collected or received by him for premiums on policies of insurance and renewals thereof, or for any other account whatever, and shall with fidelity do and perform the duties assigned to him as the agent of said company, according to the best of his ability, and the instructions that may be from time to time communicated to him by a proper officer or representative" of said company, is comprehensive enough to include an accounting for all moneys it is, or may become, the duty of such agent to pay over to the company, within the scope of his agency, whether the items have been specified by agreement before or after the execution of the bond.

2. **Same—Judgment Exonerating Sureties not Sustained.**

The record examined, and held, the findings and judgment of the court are contrary to the evidence and the law of the case.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by National Union Fire Insurance Company against J. V. McDonald, M. S. Cralle, and E. L. Cralle, on a fidelity bond. Judgment for defendants, and plaintiff appeals. Reversed.

Geo. B. Rittenhouse, F. A. Rittenhouse, John T. Webster, and Wm. F. Davis, for plaintiff in error.

Bailey & Hammerly, for defendants in error.

Opinion by THREADGILL, C. This action was brought by plaintiff in error, as plaintiff, against defendants in error, as de-

fendants, upon a fidelity bond for $500 executed May 13, 1916, by defendant McDonald, as principal, and M. S. Cralle and E. L. Cralle as sureties, in the matter of said McDonald's agency in writing fire insurance for said plaintiff. The bond was conditioned as follows:

"The condition of the above obligation is such that, if the above bounden J. V. McDonald, as agent of said company, shall faithfully and punctually pay over to the said company all amounts due, or that may become due to it from time to time, for moneys collected or received by him for premiums on policies of insurance and renewals thereof, or for any other account whatever, and shall with fidelity do and perform the duties assigned to him as the agent of said company, according to the best of his ability and the instructions that may be from time to time communicated to him by a proper officer or representative of said National Union Fire Insurance Company, and shall at the termination of said Agency faithfully surrender and deliver to said company, or to its order, all books of record, supplies and other property belonging to said company, then this obligation to be void, otherwise to remain in full force and virtue. The said sureties waiving notice (as to the time that same shall be given) of any failure on the part of said agent to faithfully perform any of the duties or obligations aforesaid."

Plaintiff contended that this obligation was broken by failure of said J. V. McDonald to pay over certain moneys due the company as defined in a memorandum commissions agreement and solicitor's agreement signed by the parties May 17, 1916. The pertinent part under the said agreement was, in substance, that the unearned commissions or return premiums on policies, canceled pro rata or otherwise, are to be returned to the company, and that any advances made by the company for commissions or fees, or notes for premiums that are not paid within 60 days after maturity, are also to be remitted and the company was not required to sue the note-makers in order to acquire the right to charge the agent with such return fee or commission.

Plaintiff alleged that the amount due by the agent's failure to perform his duty, under the terms of the bond, was $2,624.31, for which the sureties were liable in the sum of $500 as fixed by the bond.

The defendant J. V. McDonald was not served with summons and did not appear in the case. The sureties filed answer and denied any liability on the bond. They contended that the agent had paid to the company all sums of money justly due and owing from said agent to said company, by reason of any transaction between the parties within the purview of the agency and for which the said bondsmen were liable.

The cause was tried to the court without a jury, and the court made findings of fact and conclusions of law and rendered judgment for defendants, and the plaintiff has appealed asking for a reversal upon the ground that the findings of fact and judgment are not sustained by the evidence.

The court finds, in substance, that on May 17, 1916, the defendant McDonald made an agreement as to "advance commissions charged back," to the effect that said agent should be allowed his commission in advance, and where part of the premium was paid in money and a part by note, the agent should take his full commission out of the cash paid, and, if the note was not paid when due, the company was to charge the agent with the pro rata portion of the original cash collected; that the said contract provided for "return commissions on indorsements," and meant that if the policy was decreased during the term, the agent's commission, which he had collected in advance, should be reduced pro rata, and the difference charged to his account as a return commission; that the contract provided for "return commissions on cancellations," which meant "that where the policy holder, during the term of a policy, canceled it, and the company makes a refund to the policy holder, and the agent's account is charged with his pro rata portion of the amount returned, that under such conditions, in insurance terms, the said transaction would be designated "return commission on cancellation." We think the evidence fully sustains these findings. But the court further finds that the account sued on consists in items of "advance commissions charged back"; that is, the agent's pro rata part of the unpaid premium notes. We do not think the evidence supports this finding as the itemized account shows otherwise. There are many items in this account "cash collected in excess of commission." However, we do not think this makes any difference in determining the question of liability. As we view it, the fidelity bond was to insure the faithful performance of the agent's duty, and one of such duties was the turning over to the company "all amounts due or that may become due to it from time to time for moneys collected or received by him for premiums on policies of insurance and renewals thereof, or for any other accounts whatever." This language is plain and unambiguous, and needs no construction to make it applicable

to the situation here. It not only applies to the faithful performance of the agent's duties as known to the parties at the time the bond was executed, but to the faithful performance of his duties as agent under the instructions of the company in the future. The language is broad enough to include any duty arising in the work o. the agency, and we cannot see how it can be contended that the bond is not liab e because an agreement was had after the bond was given as to the manner of how the agent should take out his commission in full according to the amount of the premium and be liable pro rata for any failure of that part of the premium not paid by the policy holder, which was to be charged to his account. If it was the agent's duty as agent to pay a part of his commission to the company for reasons agreed upon by the parties, the language of the bond "or for any other account whatever." is broad enough and plain enough to cover such duty. Prudential Insurance Co. v. Burger et al., 16 N. Y. Supp. 515; Chamberlain & Gillette v. Hodgetts et al. (Tex. Civ. App.) 99 S. W. 161.

Defendants contend that the language fixing liability on the bond should not be applied to any of the duties of the agent, except accounting for moneys collected for premiums or renewals thereof exclusive of "advance commission charged back," "return commissions on indorsement" and "return commission on cancellation." This is substantially what the court found and concluded as a matter of law, and the court further found and concluded that there were no items in the account for which the bond was liable. Defendants cite the ejusdem generis rule to support their contention. This rule, as stated in 6 R. C. L. 843, is as follows:

"That where no intention to the contrary appears, general words used and specified terms are to be confined to things ejusdem generis with the thing previously specified."

Also, 13 C. J. 537, par. 501; Bell v. American Insurance Co. (Wis.) 181 N. W. 733; Board of County Commissioners v. Grimes, 75 Okla. 219, 182 Pac. 897. We have examined these authorities, and we do not think they support the contention. We cannot see that the pro rata charged back commissions provided for in the agreement are in a different class inconsistent with cash collected from premiums or renewals in excess of the agent's commission. They all flow from the same source—the premiums for the policy of insurance paid in cash or part cash and part credit, and to account for them was within the scope of the agency whether the particular items making up

the duties of the agent were fixed before or after the bond was executed.

There is some evidence in the record that, after the agency expired in October, 1921, the agent collected some of the premium notes, executed while he was agent, amounting to $150, and failed to turn the same over to the company, but this cannot be construed as a liability on the bond, and the evidence proving this fact should not have been admitted for any purpose. It was outside the issues. 9 C. J. page 44: Fresno Enterprise Co. v. Allen et al. (Cal.) 8 Pac. 59; Ida County Savings Bank v. Seidensticker et al. (Iowa) 102 N. W. 824.

There is considerable conflict in the evidence as to the amount of the agent's indebtedness at the time the agency expired. Plaintiff, by its itemized account, claimed $2,541.72. and defendants claimed, by the evidence of J. V. McDonald, the agent, that he was entitled to certain credits, which were itemized by him, and that if the account was properly credited with these items, his indebtedness would only be $341.02. Plaintiff denies the validity of these credits. and the question is one to be determined by the trial court.

The cause therefore is reversed for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. p. 1075, §153. (2) 4 C. J. p 1164, §3181.