## UNITED STATES FIDELITY & GUARANTY CO. v. KERN et al.

No. 26969. Opinion Filed Dec. 1, 1936.

Rehearing Denied Dec. 15, 1936.

A. J. Welch, for plaintiff in error.

Mitchell & Mitchell, for defendant in error Elgin Kern.

PER CURIAM. This action was commenced in the district court of Custer county by the United States Fidelity & Guaranty Company, hereinafter referred to as the insurance company, as plaintiff, against Emanuel Keil, as principal, and Elgin Kern and J. J. Klopfenstein, as sureties, on a fidelity bond. The principal, Emanuel Keil, filed no answer and made no defense in the case, although he was served with summons as required by law, and thereupon judgment was rendered against him for the full amount sued for. The defendant in error J. J. Klopfenstein has failed to file an answer brief and has abandoned the case in this court.

The action was tried to a jury, which returned a verdict for the defendants Elgin Kern and J. J. Klopfenstein, and from a judgment on this verdict the insurance company appeals.

The bond sued on was conditioned as follows:

"The conditions of this obligation are such, that whereas the above bounden principal has been appointed by said Company as its Agent at Clinton, Okla. Now, if the said principal shall in all respects observe and fulfill the instructions of the said Company, and shall duly and properly account for, pay over, and apply all sums of money which may be received by him as such agent, whether for premiums on bonds, burglary policies or other kinds of insurance, or with which to pay losses, or upon salvage, collections, or otherwise, which may come into his hands, or possession, or under his control, for and in behalf of the said Company, and shall keep true and correct books of account; and make regular and correct reports of the business transacted by him to the said Company, and shall in all other respects well and faithfully discharge and perform his duties as such Agent, and shall, upon the termination of his agency, from whatever cause, deliver up and hand over all moneys, books, accounts, memoranda, property, effects and other things belonging to the said Company or connected with or growing out of the said agency, to such person or persons as the said Company or its Special Agents shall order and direct, then this obligation to be void and of no effect; otherwise, to remain in full force and virtue. The sureties on this bond waive notice of any default the said principal may or shall at any time make."

The contention of the insurance company was that the said Emanuel Keil, acting as agent under said bond, collected certain sums of money for and belonging to the insurance company, but did not pay over or

account to the plaintiff for said money so collected in the sum of $717.92; an itemized, verified statement of the account being attached to the petition.

The defendant Kern in his answer admitted the execution of the bond and stated that he is not liable thereon for the reason that he has been exonerated from the obligation of the bond by reason of the action of the insurance company, through its agents, in that the insurance company, in conjunction with other companies who were at that time represented by Keil, took over the agency, together with its assets, and without notice to the surety proceeded to sell the same; that the said Keil and the insurance companies entered into an agreement whereby a trustee was appointed who negotiated a sale of the agency to one Crawford; that in order to complete the sale and make title the trustee called upon the surety, Kern, requested him to sign a stipulation agreeing to the sale of the agency, and at that time represented to said surety that the agency was solvent and the surety would suffer no loss on the bond sued on as a result of the sale of the agency, and relying upon said representations, the surety consented to the sale; that at that time there was a sufficient amount of assets belonging to the agency to have liquidated all of its indebtedness; that the action of the insurance company was prejudicial to the rights of the surety; that said trustee took into his possession a sufficient amount of accounts receivable to have fully paid the account of the insurance company, and that if the same had not been collected, it was due to the fault of the insurance company through its trustee. The surety also alleges that he neither admits nor denies the account alleged by the insurance company, but says he is without knowledge as to the correctness of the account and asks that the insurance company be required to make strict proof thereof.

The insurance company, in its reply, alleged that whatever was done in the taking and handling of the assets of the principal obligor was for the benefit and protection of the surety, Kern, as well as other interested parties; that whatever proceeds were had and assets taken were had and taken with the written consent and approval of the said Kern in that on December 15, 1932, the said Kern signed a written consent for the sale, as follows:

"Clinton, Oklahoma, Dec. 15, 1932
"Consent for Sale
"That the outstanding indebtedness of the E. Keil Agency, now insolvent, may be reduced by the amount of sale, the Insurance Companies composing said agency are hereby instructed to effect a sale of the agency on the best terms possible, which is herein specifically consented to and with no prejudice to any insurance company on the bond or bonds given to each said company.

"Leo Schneider
"J. P. Gore
"A. Russell
"Elgin Kern."

And that on the 15th day of February, 1934, the said surety signed the following instrument:

"Clinton, Oklahoma,
"Consent of Bondsmen

"Whereas the undersigned executed bond or bonds as surety for E. Keil to the United States Fidelity and Guaranty Company and the Fidelity and Guaranty Fire Corporation, both corporations of Baltimore, Maryland, covering the acts of the said E. Keil as agent of the said companies, and

"Whereas, the said E. Keil being short in his accounts with both companies it is deemed best for the protection of all parties concerned that additional security be gotten from E. Keil, or that the said companies attempt to get additional security to protect all parties concerned.

"Now therefore it is hereby expressly agreed that said companies may get or attempt to get from the said E. Keil additional security on said accounts, without impairing any rights the said companies or either of them may have under said bond or bonds, it being expressly agreed that all rights under said bonds shall be and are retained by said insurance companies.

"In witness whereof, this 15th day of February, 1934, the undersigned hereby executes his written consent thereto.

"Elgin Kern."

As stated, the cause was tried to a jury. The record shows that at the close of the evidence the insurance company, through its attorneys, moved for a directed verdict.

As we have seen, the liability of the principal, Emanuel Keil, has become final. That being true, the general rule is that a surety is liable for a like amount and to the same extent as the principal, unless the obligee violates some provision of the bond or commits some act whereby the surety's rights are prejudiced. The testimony shows that the trustee sold the agency and all of its assets, and that the proceeds therefrom were applied to the obligation of the agency, and there is no evidence that any money was

misappropriated or that any fraud was committed in connection with the sale, and the testimony is clear and uncontradicted that at the time suit was brought the agent was indebted to the insurance company in the amount sued for, less a small amount that seems to have been accounted for after the action was filed. The defendant Kern, by executing the consent to the sale of the agency, waived his right to be discharged. Kneisley Lumber Co. v. Stoddard, 131 Mo. App. 15, 109 S. W. 840.

The record, taken as a whole, fairly discloses that the sale was in all respects conducted in such a manner as to protect the interest of the sureties on the bond, and that rather than being prejudiced thereby the sureties were benefited by the acts of the insurance company in bringing about the sale.

The bond provides that the agent shall well and faithfully discharge and perform his duties as such agent, and "upon the termination of his agency, from whatever cause, deliver up and hand over all moneys, books, accounts, memoranda, property, effects, and other things belonging to the said company or connected with or growing out of said agency, to such person or persons as the said company or its special agent shall order and direct." The bond also provides: "The sureties on this bond waive notice of any default the said principal may or shall at any time make"; thus we see that the obligation of the sureties was not a conditional one, but was absolute. No act or connivance or gross negligence, amounting to a fraud, was in the slightest degree established by the evidence to relieve the sureties from their liability. The conduct of the insurance company in its effort to salvage everything possible from the agency after it became insolvent conclusively shows that the sureties were not prejudiced thereby, and the acts of the insurance company were in no way or manner in derogation of the terms of the bond. The fact that Emanuel Keil, through the aid of the trustee, sold the agency to another does not relieve the sureties, for there is nothing in the record to show that the rights of the sureties were prejudiced thereby. Springfield Fire & Marine Insurance Company of Springfield, Mass., v. Douglas, 174 Okla. 125, 49 P. (2d) 1073; Osage O. & R. Co. v. Dickason-Goodman Lumber Co., 106 Okla. 119, 231 P. 475; National Union Fire Ins. Co. v. McDonald, 120 Okla. 226, 253 P. 273; Capps v. Insurance Company of North America, 153 Okla. 38, 6 P. (2d) 1041.

The defendant Klopfenstein in his answer and as a defense stated that the insurance company secured the signatures of the sureties to an agreement authorizing the sale and at the time represented that Keil, the agent, was solvent and that the sureties would suffer no loss on the bond as a result of the sale of the agency, and that, relying upon these representations, he consented to the sale. In his testimony he stated that he did not sign the waivers or consent to the sale, and that he did not know that the agency was taken over.

It is a rule of pleading in actions at law that, in order to enable plaintiff to recover or defendant to succeed in his defense, what is proved, or that of which proof is offered by the party on whom lies the onus probandi, must not vary from what he has previously alleged in his pleadings; and this is not a mere arbitrary rule, but is one founded on good sense and good law. Chambers v. Van Wagner, 32 Okla. 774, 123 P. 1117.

Klopfenstein having failed to file answer brief, this court is not required to search the record for the purpose of finding some theory on which to sustain the judgment of the court below, but may reverse or affirm such judgment at its discretion. Stevens v. O'Neal, 94 Okla. 298, 222 P. 524.

The judgment is reversed and the cause remanded, with directions to render judgment in favor of the insurance company and against the sureties, Elgin Kern and J. J. Klopfenstein, according to the motion for an instructed verdict, less the amount accounted for after the petition was filed.

The Supreme Court acknowledges the aid of Attorneys A. R. Swank, J. M. Springer, and Ernest F. Jenkins in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. A. R. Swank, and approved by Mr. J. M. Springer and Mr. Ernest F. Jenkins, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, and BUSBY, JJ., absent.